UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| BIJAN ALMASSIAN, Ph.D. : | |
| VS. : | NO. 3:03CV648(MRK) |
| CAROLYN R. KAHN : | JUNE 18, 2004 |

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

    This is an action that was filed in the Superior Court but was removed here by the defendant because one of the four counts alleges a federal cause of action for violation of the Equal Protection Clause of the Fourteenth Amendment. The other three counts allege tortious interference, intentional infliction of emotional distress, and negligent infliction of emotional distress. Count One assumes that the defendant was a state actor – an allegation she both denies, in her pleadings, and embraces in her present motion. Assuming the defendant was a state actor, and based upon the assertion that she appeared to be prejudiced against the plaintiff not because of his ability but because of his religion, the plaintiff in Count One asserted religious discrimination in the provision of state funding.

1

The plaintiff is a naturalized United States citizen who was born in Iran and is Muslim in his religious beliefs. He is a distinguished research chemist and successful business executive. In the middle of a stellar career, he joined a Connecticut startup company, AlexiPharma, Inc., as its Chief Operating Officer. The company sought a seed money grant from Connecticut Innovations, a "quasi-public" entity charged by statute with distributing state funds to firms like AlexiPharma in the hope of creating jobs for Connecticut residents. The defendant was the head of its BioScience division.

When the plaintiff joined AlexiPharma, the company's founders were certain that they were about to receive a $500,000 grant from Connecticut Innovations. They considered it "a done deal." The defendant, however, took an immediate dislike to the plaintiff and soon informed the founders that the company would receive no Connecticut Innovations money while the plaintiff was at its head. Harry Penner, the founder to whom the defendant made these statements, regretfully informed the plaintiff: "Carrie wants to fund the company and under one condition and that's a budget without you. She wants a budget without you. She wants you out, I'm sorry, by January." He added: "For some reason Carrie Kahn doesn't like you. She really doesn't like you. I don't know what's wrong, but I think this is a Muslim/Jewish thing. I'm very disappointed about this."

As a result, the plaintiff felt constrained to resign.  He did so by January, as demanded, taking a position as Chief Operating Officer at Panacea Pharmaceuticals in Maryland, where he oversees all corporate operations – research and development, human resources, business development, facilities, and investor relations.  To do so, he had to leave his family behind in Cheshire where they had purchased a home, his wife is employed and his younger son is enrolled in the local schools.  Although he has suffered no financial loss, he has suffered severe emotional distress as a result.

The defendant has moved for summary judgment.  As to Count One, she claims that there is no evidence that religious bias motivated her actions.  As to Count Two (tortious interference), she claims an absence of *any* improper, or tortious, motivation on her part.  As to Count Three (intentional infliction of emotional distress), she claims that her conduct was not "extreme and outrageous."  She asserts that "extreme and outrageous" conduct also is a necessary element of negligent infliction of emotional distress (Count Four) and thus that she should prevail on that claim for the same reason.  Finally, as to all three state law claims, she asserts sovereign immunity as a state actor.[1]

---

[1] The defendant's sovereign immunity claim is curious.  Her Local Rule 56 Statement makes no assertion that she is a state actor and her Answer to the Complaint asserts that she is not. (Answer to Complaint, ¶¶ 2, 3)

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party

bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury.  In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996).  Rather, the court must resolve any ambiguities and draw all inferences against the moving party.  Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991).  The evidence of the party against whom summary judgment is sought must be believed.  Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994).  The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics

Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), *citing* Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

If the evidence in this case is viewed, as it must be, in the light most favorable to the plaintiff's position, the defendant defamed the plaintiff and knowingly and maliciously asserted that he lacked the very skills and qualities as an executive which she knew he possessed – and did that for the express and stated purpose of causing his removal from the company. As to Count One, then, the only remaining issue, assuming that the defendant was a state actor, would be whether she had an impermissible motive in doing so.

**Count One – Section 1983**

For purposes of analyzing Count One, the most helpful approach is that favored in employment discrimination actions. "To make out a prima facie case, the plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.). Here, the plaintiff is a member of a protected class, that is, a religious minority. He was qualified for his position. He suffered an adverse action, *i.e.*, the defendant demanded that he be dismissed. As soon as he was gone, and the company was all non-Muslim, the defendant granted the company's funding request in the full amount requested. "[T]he fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001).

The defendant's asserted legitimate nondiscriminatory reason for her actions, that the plaintiff was unqualified to be a business executive, was a false one. "Proof that the defendant's explanation is unworthy of credence is...one

8

form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992).  "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proferred reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

      Circumstantial evidence is in no way inferior to direct evidence. "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."  United States v. Andrino, 501 F.2d 1373, 1378 (9th Cir. 1974).  Even in criminal cases, convictions "can rest solely on circumstantial evidence, which is intrinsically as probative as direct evidence."

United States v. Young, 568 F.2d 588, 589 (8th Cir. 1978).  In cases involving prohibited discrimination, circumstantial evidence almost always must be relied upon to prove a plaintiff's case.  Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997).  *Cf.* Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ("An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.").  "We have often acknowledged the utility of circumstantial evidence in discrimination cases....The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted.  'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'  Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n. 17 , 77 S. Ct. 443, 1 L.Ed.2 493 (1957)."  Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154 (2003).

 As to Count One, then, there is sufficient evidence to permit a jury to find that the defendant, in administering state funds, discriminated against the plaintiff on the basis of his religion.  Such discrimination by a state actor violates the Equal Protection Clause.  *E.g.*, Fraternal Order of Police Newark Lodge No. 12 v. City of Newark, 170 F.3d 359 (3d Cir. 1999); Cowan v. Strafford R-VI School District, 140 F.3d 1153 (8th Cir. 1998).

**State Law Claims – Sovereign Immunity**

Turning to the three state law claims, the defendant asserts as to all three that she is entitled to sovereign immunity. Her claim must fail for want of evidence. Counts Two, Three and Four do not allege that the defendant was acting under color of law. In her Local Rule 56 Statement, the defendant does not assert that she was a state actor, nor does she present any evidence in support of such a claim. Accordingly, these counts must be considered without regard to the defendant's legal status.

**Tortious Interference – Count Two**

"An action for tortious interference with a business expectancy is well established in Connecticut. The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable promise is enough....A cause of action for tortious interference with a business expectancy requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation...or that the defendant acted maliciously....Jones v. O'Connell, 189 Conn. 648, 660, 458 A.2d 355 (1983). It is also true, however, that not every act that disturbs a contract or business expectancy is actionable. Blake v. Levy, 191 Conn. 257, 260, 4664 A.2d 52 (1983). A defendant is guilty of tortious interference if he has engaged in improper conduct. Id., 261; see 4 Restatement (Second), Torts 766, 766B, 767

(1979). [T]he plaintiff [is required] to plead and prove at least some improper motive or improper means. Kakadelis v. DeFabritis, 191 Conn. 276, 279, 464 A.2d 57 (1983); Blake v. Levy, supra, 262." Golembeski v. Metichewan Grange No. 190, 20 Conn. App. 699, 702-703, 569 A.2 1157, cert. denied, 214 Conn. 809, 573 A.2d 320 (1990); Biro v. Hirsch, 62 Conn. App. 11, 21 (2001).

The defendant knowingly and maliciously made false accusations concerning the plaintiff's competence to manage a startup business. She informed the company's investors that she would deny funding unless the plaintiff was removed from the budget. She did this knowing that the plaintiff fully met all of the qualifications she had specified. Although the investors remained loyal to the plaintiff, the plaintiff himself felt constrained to leave under those circumstances, and did so. The evidence, therefore, supports the plaintiff's tortious interference claim.

**Intentional Infliction of Emotional Distress – Count Three**

Whether the conduct alleged by plaintiff was "extreme and outrageous" within the meaning of established law is a jury question, and the court should not usurp the role of the jury unless no reading of the facts alleged by the plaintiff could constitute the tort. As the court held in Mascia v. Faulkner, No. 349036, pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.): "Summary judgment is inappropriate for issues involving 'motive, intent and subjective feelings and

reactions,' United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376.  [Defendant's] intent, *whether the conduct was extreme and outrageous,* whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of the [plaintiffs'] distress are all genuine issues of material fact for the jury." Cf., e.g., Berry v. Loyseau, 223 Conn. 786, 807 (1992); Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988); Gilman v. Gilman, 46 Conn. Sup. 21, 23 (1999); Lugo v. Rodriguez, 8 CSCR 244 (1992); Hansen v. Berger, Lehman Assoc., 9 CSCR 1243, 12 Conn. L. Rptr. No. 17, 555 (1994).  See also Batick v. Seymour, 186 Conn. 632, 646-47 (1982).  Courts in sister jurisdictions take the same position.  E.g., Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996); Halio v. Lurie, 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dept. 1961); Murphy v. Murphy, 486 N.Y.S.2d 457, 459 (3d Dept. 1985); Flatley v. Hartmann, 138 A.D.2d 345, 525 N.Y.S.2d 637, 638 (2d Dept. 1988); Richard v. Armon, 144 A.D.2d 1, 4, 536 N.Y.S.2d 1014, 1016 (2d Dept. 1989); Collins v. Willcox Inc., 158 Misc.2d 54, 57, 600 N.Y.S.2d 884, 886 (N.Y. County, 1992).

Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element of the wrong.

In Benton v. Simpson, 78 Conn. App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and were a "cancer" in the company not only was sufficiently extreme and outrageous to

13

justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets.  In Nance v. M.D. Health Plan, Inc., 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress.  In Rosten v. Circuit Wise, Inc., 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities.  Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 9 CSCR 196 (1994).  Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn. L. Rptr. No. 10, 312 (1995).  In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor.  Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996).  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by the defendant's driver, made in the

presence of the plaintiff's customers, suggesting that the plaintiff was a poor credit risk and arguably making racially demeaning references to him, could be found "extreme and outrageous" so as to survive a motion for summary judgment. An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment. <u>Stack v. Jaffee</u>, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.). A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired." <u>Grossman v. Computer Curriculum Corp.</u>, 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000). In <u>Talit v. Peterson</u>, 44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants had subjected the plaintiff, a coworker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike. Terminating an employee in retaliation for his union activities has been held to be sufficiently "extreme and outrageous" to support a jury verdict and

award of substantial damages for intentional infliction of emotional distress. Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law. Ultimately, it is a community standards test that applies. For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society. In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury. Faraclas v. Botwick, 32 Conn. L. Rptr. No. 11, 414 (2002).

This court does not "sit as a seventh juror." The plaintiff has a right to have a jury determine whether the conduct in question is sufficiently outrageous to justify an award of damages. Berry v. Loyseau, supra, 223 Conn. at 807; Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988).

**Negligent Infliction of Emotional Distress – Count Four**

The defendant's entire argument as to Count Four (other than her misplaced claim of sovereign immunity) is premised on the assumption that to be actionable the defendant's negligent conduct must have been "extreme and outrageous" – an apparent oxymoron. In this, the defendant simply is wrong.

16

The elements of negligent infliction of emotional distress are: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). The defendant's conduct need not have been extreme or outrageous. This is not an element of negligent infliction of emotional distress. Copeland v. Home and Community Health Services, Inc., 285 F. Supp. 2d 144, 150-51 (D. Conn. 2003); Desardouin v. United Parcel Service, Inc., 285 F. Supp. 2d 153, 160 (D. Conn. 2003).

Since the defendant has made no other argument on this count, her motion for summary judgment on Count Four clearly must be denied.

        Respectfully submitted:


_____
    JOHN R. WILLIAMS (ct00215)
    51 Elm Street
    New Haven, CT 06510
    (203) 562-9931
    FAX: (203) 776-9494
    E-Mail: jrw@johnrwilliams.com
    Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Kevin S. Coyne, Coyne, von Kuhn, Brady & Fries, LLC, 999 Oronoque Lane, Stratford, CT 06614.

_____
JOHN R. WILLIAMS