UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| BIJAN ALMASSIAN, Ph.D. : | |
| VS. : | NO.  3:03CV648(MRK) |
| CAROLYN R. KAHN : | JUNE 18, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

*I*   *RESPONSES TO DEFENDANT'S CLAIMS OF FACT*

1. Agree.

2. Agree.

3. Objection.  This paragraph states a legal conclusion.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree with the individual factual statements, but disagree with the assertion that there was something inconsistent between the first sentence and the remaining sentences.

9. Agree.

10.  Agree.

11. Agree.

12. Agree.

13. Agree that was one of the reasons, but disagree with the implication that it was the only reason.

14. Disagree. (Plaintiff's deposition, pp. 17, 40)

15. Agree.

16. Agree.

17. Agree.

18. Disagree. (Plaintiff's deposition, pp. 24, 34-37, 40, 50, 74, 76, 86-87)

19. Agree that in all other cases that was the nature of the analysis. Disagree that it was the basis of the analysis in this case. (Ibid.)

20. Agree that it is her opinion. As to whether her opinion is shared by "any sound investment individual," the defendant has failed to cite any admissible evidence in support of her claim so the plaintiff does not respond to it.

21. Agree that it is the defendant's opinion. As to whether her opinion is shared by others, the defendant has failed to cite any admissible evidence in support of her claim so the plaintiff does not respond to it.

22. Agree.

23. Disagree. (Plaintiff's deposition, pp. 24, 34-37, 40, 50, 74, 76, 86-87)

24. Disagree. (Ibid.)

25. Disagree. (Id at 80)

26. Agree that the defendant stated to Mr. Penner, at the times stated, that she considered the plaintiff unqualified.

27. Disagree. (Defendant's Answer to Complaint, ¶ 7)

28. Agree.

29. Agree.

30. Disagree. (Plaintiff's deposition, pp. 69-71)

31. Plaintiff has no way of knowing whether defendant's assertion is true or false.

32. Agree with first two sentences. As to the third sentence, the issue whether something is or is not "important to note" is not a statement of fact and therefore the plaintiff makes no response to it.

33. Agree.

34. Disagree. (Plaintiff's deposition, pp. 34-35)

35. Agree.

36. Agree.

37. Disagree in part. The plaintiff was forced to resign because of the defendant's relentless attack upon him. She undermined his ability to function as a top executive of the company. The company could not get funding as long as he was an executive, because the defendant's agency was at that time the only available source of funding. (Plaintiff's deposition, p. 70)

38. Disagree in part. In his present position at Panacea Pharmaceuticals in Maryland, the plaintiff oversees all corporate operations – research and development, human resources, business development, facilities, and investor relations. (Id at 56-58)

39. Disagree. (Id at 86)

40. Agree.

41. Agree, but utterly irrelevant. The issue is not the defendant's religion but her prejudice.

42. As to the first sentence, the defendant offers no admissible evidence in support thereof and therefore the plaintiff need not respond to it. As to the second sentence, the plaintiff agrees that he has found through experience that in supervising serious scientists the bullying approach is not effective. (Plaintiff's deposition, pp. 61-62)

43. Agree, although the undersigned does not exactly understand the meaning of the supposedly English phrase "looking to leave".

44. Disagree. That was a "trick question" posed by defense counsel. The plaintiff had all the qualifications that the defendant was asking for. That is not only his opinion; it was the opinion of all the members of the Board of Directors. (Plaintiff's deposition, p. 86)

45. Agree.

## II    PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1.  The plaintiff holds a Ph.D. and has received three years of post-doctoral training at Boston University Medical Center.  (Plaintiff's Deposition, pp. 10-11)

2.  The plaintiff is a United States citizen.  He was born in Iran and came to the United States in 1978.  (Id at 11)

3.  The plaintiff was a manager, and then the director, of Genelabs, a firm which developed drugs for cancer and for immunological disorders.  (Id at 13)

4.  As such, he was responsible for the company's entire drug development program.  (Id at 14)

5.  Genelabs employed more than 150 people.  (Ibid.)

6.  The plaintiff then came to New Haven in September of 1995 and served as the Director of Development at Vion Pharmaceuticals.  He left there to join AlexiPharma.  (Id at 15)

7.  While at Vion, the plaintiff started with only 4 people and build a team of over 22 people, most of them Ph.D.s and M.D.s.  (Ibid.)

8.  While at Vion, the plaintiff was responsible for both drug development and corporate development.  (Id at 17)

9.  The plaintiff joined AlexiPharma in May of 2002.  (Id at 19)

10.  The plaintiff was hired by AlexiPharma after an interview in which he provided an overview of what needs to be done to set up a small biotechnology

company and all the things required to raise adequate funding for such an enterprise. (Id at 24)

11. Dr. Makriyannis and Harry Penner had been given to understand, before the plaintiff came on board, that they were going to receive money from Connecticut Innovations – that "it was a done deal." (Id at 27)

12. AlexiPharma's management team all came from major pharmaceutical companies. The board was all CEOs, three of them CEOs of biotechnology companies. Some of the board members already had put in their own seed money. (Id at 28)

13. The day after the plaintiff received a copy of the e-mail which the defendant sent to Harry Penner and Robert Carter, in which she stated that "AlexiPharma needs a President who is a businessman/scientist who can make the tough decisions...[and] this individual is not Bijan..." (Defendant's Exhibit D), Mr. Penner met with the plaintiff and told him: "Carrie wants to fund the company and under one condition and that's a budget without you. She wants a budget without you. She wants you out, I'm sorry, by January." (Plaintiff's deposition at 34)

14. Mr. Penner stated that he had met with the defendant several times and that she had stated that "we will give you a budget, prepare a budget, but give it to me without Bijan in it." (Ibid.)

15. The plaintiff asked why the defendant made his departure a condition of Connecticut Innovations funding, and Mr. Penner responded: "For some reason Carrie Kahn doesn't like you. She really doesn't like you. I don't know what's wrong, but I think this is a Muslim/Jewish thing. I'm very disappointed about this." (Id at 35)

16. When he met with her in October and November, the plaintiff found that the defendant "was cold with me, she became cold and...she wanted specifically to exclude me from a meeting with the investors....Harry Penner told me she wants you not to go to the meeting." (Id at 37)

17. The plaintiff's senior management experience prior to those events included representing a company in 12 countries around the world and negotiating preclinical business from Switzerland and England. He clearly was qualified to become president of a company like this one, which had no funds and no management. (Id at 40)

18. Plaintiff also owned 5.6% of the company's equity. (Id at 42)

19. At the time the defendant sent her aforesaid e-mail to Richard Carter, he was not employed by the company. He was a candidate for the position of vice president of biology. (Id at 50)

20. In his present position at Panacea Pharmaceuticals in Maryland, the plaintiff oversees all corporate operations – research and development, human resources, business development, facilities, and investor relations. (Id at 56-58)

21. The plaintiff was emotionally drained and devastated by the defendant's actions in sabotaging his credentials and telling his boss that he was useless. (Id at 69)

22. The plaintiff was forced to resign because of the defendant's relentless attack upon him. She undermined his ability to function as a top executive of the company. The company could not get funding as long as he was an executive, because the defendant's agency was at that time the only available source of funding. (Id at 70)

23. When the plaintiff left the company, the defendant provided the requested funding. (Id at 74, 76)

24. At that time, the defendant was the person at Connecticut Innovations who made the final decision on funding bioscience companies. (Id at 80) She had zero senior management experience. She had never worked in senior management in any company of any kind at any time in her career. (Id at 62)

25. The plaintiff had all the qualifications that the defendant was asking for. That is not only his opinion; it was the opinion of all the members of the Board of Directors. (Id at 86)

26. The defendant did not merely express an opinion; she misrepresented the plaintiff's qualifications. (Id at 87)

27. The defendant was the managing director for BioScience of Connecticut Innovations. (Defendant's Answer to Complaint, ¶ 2)

28. The defendant denies that Connecticut Innovations was a state agency and claims that it was a quasi-public corporation. (Ibid.)

29. The defendant does not admit that she was acting under color of law. (Id at ¶ 3)

30. The defendant admits that AlexiPharma sought funding from Connecticut Innovations. (Id at ¶ 4)

31. The defendant claims that she does not know whether or not the plaintiff had the qualifications and skills which she was looking for. (Id at ¶ 7)

THE PLAINTIFF

BY_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
(203) 562-9931
FAX: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Kevin S. Coyne, Coyne, von Kuhn, Brady & Fries, LLC, 999 Oronoque Lane, Stratford, CT 06614.

_____
JOHN R. WILLIAMS